Good afternoon, ladies and gentlemen. We're here for the in-bank argument in Mondaca-Vega v. Holder. Council ready? You may proceed. May it please the Court, I'm Matt Adams with Northwest Civil Rights Project. On behalf of the petitioner, Mr. Mondaca, I'm going to seek to preserve five minutes for rebuttal. This petition challenges the final order of deportation that was entered against Mr. Mondaca and the findings of the District Court supporting that order. Findings entered against an 81-year-old man despite the fact that there have been repeated determinations going over a 30-year period that he was a U.S. citizen. This case begins and ends with the agency having the burden of demonstrating that Mr. Mondaca is not a citizen, that he's not the person he claims to be. Because of all that is at stake in a case like this, the Supreme Court has established two key protections. One, a heavy burden of proof requiring the government to present clear, unequivocal, and convincing evidence, evidence which does not leave issue in doubt. And two, a searching, independent appellate review. I mean, that sounds almost like more than beyond a reasonable doubt, because even in criminal cases, some evidence is equivocal. So if you're asking for unequivocal evidence, that sounds to me like a standard of proof way beyond what is applicable in criminal cases, if you take that literally. If you think of it as a mere rhetorical slur, then it's just... Well, I don't think it can simply be disregarded as an oratory flourish, because the Supreme Court has repeatedly... I understand that you don't take that position. I'm just saying that's the alternative. So your position is it means something, and if it really means something, it sounds to me like it means something that would put it beyond even what is applicable in criminal cases. Well, I think... Unequivocal. Have you ever seen proof that's unequivocal? When you deal with human events and people's memories and people's evidence, aren't we taught in law school that every fact cuts two ways or three ways or four ways? It is strong language, but I would use the explanation provided by the Supreme Court in Addington when it says it approximates, if not surpasses, that applied in the criminal context. And then repeatedly, the Court has time and again said that it must not leave the issue in doubt. Counsel, can we ask you a question? Your initial premise was that the Supreme Court has told us many times that the standard of review was this demanding one. Has it ever told us that in a case like this? Every case that I can find where the Supreme Court has that heightened standard of review is a denaturalization case. And the Woodby case that you cite for the proposition that the standards are the same makes a pretty clear distinction between the burden of proof and the standard of review. Woodby says the burden of proof is clear convincing evidence, but the standard of review is the typical standard of review, which is clear error of substantial evidence. So when has the Supreme Court told us to apply the heightened standard of review in a case like yours? In focusing on the standard of review, all the Supreme Court cases we cite are denaturalization cases. But doesn't Woodby say precisely to the contrary? Woodby says, Justice Stewart says, don't confuse standard of review with burden of proof. Burden of proof is clear convincing, as you say. But standard of review, he says in this case, citing the statute, is for substantial evidence. Why doesn't that apply here? Woodby certainly distinguishes the burden of proof and standard of proof, and Woodby focuses on the burden of proof. But what we do have is this Court's holding in Lim back in 1970, which was not in a denaturalization context, which also applied this same standard of independent review. No, I agree that we've done it. My question is, has the Supreme Court ever done it? I don't think the Supreme Court, I'm not aware of any case where it's explicitly applied a standard of review in the deportation context. And certainly, we're in kind of a strange hybrid here. We're not only – Well, is this deportation or taking away somebody's citizenship? And that's precisely the point. Right. That's precisely the point I was trying to make, is this is a hybrid, that it's not only deportation, but it's a case where the Court has – or rather, the agency has already made repeated determinations that he is a U.S. citizen. And I think – Well, now you have a district judge coming out the other way, you know. We usually sort of give a lot more deference to district judges than we do to agencies. The district judge certainly made findings against our client. We would respectfully assert that those findings were riddled with speculation. They weren't based on findings of fact on factual premises, but rather conclusions about how a citizen in his shoes should act. We can talk about that if you say that's the standard of review applicable in all – or the standard of review applicable in all cases. We can see whether or not you have a case here. But there's nothing special about this case, right? I – In the standard of review. In the standard of review, I still think there's a situation where the government has made multiple determinations previously that he is a U.S. citizen. And because of that, not only Mr. Mondaca, but his family now have 40 years in reliance on that to establish their roots and a home here. And so the same logic that applies in stripping an individual of his citizenship in the denaturalization context or another context like William in certificates for citizenship applies to this case. And in fact – So, counsel, why doesn't that just leave us with this situation? If your client – if your client has to come in to the district court proceeding then with the burden of showing that he is a – offering a prima facie case that he's a U.S. citizen, he satisfies that easily. He presents his evidence that he had a U.S. passport and he's done. At that point then it's incumbent on the government to show that there's been some kind of fraud. And the proof generally for fraud is clear and convincing evidence. So why isn't that the government's burden then to come back with the clear and convincing evidence that there's been some kind of fraud obtained by your client in order to get a passport, a U.S. passport? I think ultimately all sides agree that the government does have the burden to come back with clear and equivocal and convincing evidence. I mean, there's discussion about who has that initial burden. But given the facts that have been presented here and given the prior determinations, the government has that burden. It's the same burden that this court laid out in Leilong and then in Lim when it talked about prior determinations. But it's because of those prior determinations that there is these extra protections that are provided. It is true that in the standard of review, most of these cases are looking at a denaturalization context. But it's important to note that in that context, a lot of the early discussion was justifying why a person who's a naturalized citizen should be placed in a position every bit as strong as a person who claims birthright citizenship, that there weren't two classes of citizenship. But didn't the district court say right in its decision that the respondent had presented clear, unequivocal, and convincing evidence? That's the last line of the decision, isn't it? The district court certainly purported to apply the appropriate standard. And so what you're really saying then is even though that general term was used by the district court in the last line, your argument is by looking at the Ninth Circuit's model civil jury instruction that the district court really wasn't applying that. That's your argument? That is certainly one of our arguments. And so if we buy that, should we just send it back to the district court to decide under the correct standard? I think this court certainly has the discretion to determine whether it wants to send it back to the district court. I mean, I'm not sure. Whether it wants. I mean, that seems to suggest that we have some discretion in that regard. Right. The court first transferred it for factual findings. And what's noteworthy in this case is what evidence, the lack of evidence that was presented below. The government did not introduce any new evidence below. The only new evidence that was presented was by petitioner. And he presented evidence that he had two passport applications approved. So are you really, I'm cutting you off and I know it and I apologize right up front. But aren't you really saying then that even if I buy your argument that this is de novo review in this panel, that we still ought to send it back to the district court to determine first, if we buy your argument on standard of review, whether given that standard of review, there was clear, unequivocal and convincing evidence. Is that your argument? We're not arguing that this court's compelled to do that. This court certainly has the authority. I'm not talking about compelled either. If I said de novo review now, which is what I also understand your argument. If it's a de novo review, are you still suggesting that we have and should send this back for another hearing under the correct standard? I think this case is more parallel to the Murphy case. You didn't answer my question. Do you or do you not? I don't think it's necessary. Why not? Because it's more parallel to the Murphy case. And in Murphy, this court said, look, it's not. Don't you really think that if, in fact, we were thinking about that, it would really be helpful for us to determine or have the district court determine whether the petitioner was lying or not lying? I mean, you're suggesting that they weren't clear, that they were all about probability. It didn't come out. But the district court's the one who has the hearing. The district court's the one who knows the person and can tell whether they're really telling the truth or not. So even with a de novo review, it would be very helpful, would it not, to have the district court make a determination under the correct standard of review if we buy your argument. I think in many cases that would be correct. And we're not opposed to this case being sent back to the district court. I mean, there was no question his wife was not credible. Oh, I disagree with that. Well, the district court made a very firm determination about the credibility of the wife. Based on a misstatement of what the immigration judge had said. Remember that the district court never even saw the wife. It just reviewed the transcript and then misstated what the immigration said, saying that the immigration judge had discounted her testimony even though there was no credibility finding. This is another point in this case is that, yes, Mr. Mondaca has claimed multiple aliases. Whether he is Reynaldo Mondaca, who he claims to be, or whether he's Salvador Mondaca, that the government says he is, or whether he's one of the other aliases. Or that he says he was in an affidavit in 1954. I said he's claimed multiple aliases. So certainly he's told a lie at different stages along this path. The question is, is that determinant? And the government, after repeated investigations, determined that despite his misstatements, his misrepresentations, he is a U.S. citizen. He was able to present the evidence. And they approved. Again, that's Judge Bimey's point. What happened in those other determinations is really not in front of that district court. That district court, you came forward with some evidence that he is a citizen. And now the government has a proof whether those are fraudulent or whether they aren't fraudulent. And so what they did in other cases is just a matter of fraud and what the standard of review is. Isn't that true? Well, it goes back to the burden of proof. Because what happened before set the stage for the district court. And what the district court failed to appreciate is what it means to take away someone's claim to citizenship when that's been repeatedly affirmed by the government. Let me ask a question about that. Maybe it's a little bit different than the one Judge Smith was asking. We all, at least I agree with you, that the government's burden is to produce clear, convincing and perhaps unequivocal evidence. Let's view this as if it were a criminal trial for a second. And the government says, okay, it's our burden. Let me show you what we have. We have, among other things, this sworn statement from Mr. Mondalka saying, I was born in Mexico. And then they rest. Should the judge grant a directive verdict in favor of your client at that point? Or is there enough evidence to go to the trier of fact? I believe the court should grant a directive. So your own client's sworn statement that he was born in Mexico is not enough for the government to make out a prima facie case? Not in light of the subsequent history. Well, no, I'm just – the only evidence in front of the judge at the moment is – Okay. The history gets you to a clear – I can give a judge by me. The history gets you a clear and convincing standard of proof. The government comes in and says, okay, we have that burden. We have a sworn statement from the petitioner who says he was born in Mexico. Can't the judge at that point say, okay, you've met your burden of proof, at least burden of production. Now I've got to hear from the guy and see if he can explain it and see whether or not I believe him. Or are you suggesting that that sworn statement – and of course there was more. There was more than just a sworn statement. There was repeated use of the Mexican surname. But given that, why isn't this just a credibility determination after that? So your first question is presenting the fact. See, the government presented enough evidence to get to the jury, if you will. That's right. This is a finder of fact. And that's the standard context in almost every deportation proceeding, where a government officer has filed a record reportable in the form I-213. And just on that form, the agency, the respondent, the person who's in deportation proceedings, has conceded alienage. That's enough to support a finding. And that's very distinct, of course, from a case like this. Well, but why is it distinct? It's the government's burden to show that he was born in Mexico. That's what this turns out to be. And the government says, I've got really good proof he was born in Mexico. He says so. And he says so under oath. Why isn't that enough to meet the government's burden of production? Because subsequent to those statements, this government made repeated investigations and determinations that despite those earlier misrepresentations, he is, in fact, a U.S. citizen. But then we get back to Judge Smith's question, because this is where you started me. Are those determinations evidential, or do they merely shift the burden of proof in this case? Do you get to introduce those determinations to prove the contrary, or do those determinations just shift the burden of proof? Well, in this case, they're both. One, they shift the burden of proof in a dramatic way, making a very heavy burden. But, two, everything that's been relied upon by the government, his sworn statement from 1954, that's evidence, and it's contradicted then by his sworn statements made in his applications in 1977. But, again, what I gave you was the government. You then introduced those sworn statements in the application and everything else. And doesn't that judge then say, well, I've got evidence on one side, and I've got evidence on the other, and I need to determine which I believe? And that's where I think the fundamental misapprehension by the immigration – I'm sorry, the district court is. It says he was unpersuaded by petitioner's testimony. But wasn't his burden to simply persuade him? It wasn't an equiposed trying to see who's more credible. Where you have repeated determinations of citizenship, and this gets us back to the Supreme Court case law. Because citizenship is so important, because so much is at stake there, you're not in your typical setting where you're just trying to show who's got the more likely story. If there's two possible scenarios, the government always loses in this situation. And that's because citizenship goes to the duties and immunities of our – more serious than going to prison for life or being executed. There are certainly different value judgments that are made, and I don't want to say it's more serious than that. But you did say that. You did say that. I mean, people in criminal cases, all sorts of really, really terrible things happen, including losing one's life. I have a hard time believing that losing one's citizenship is more serious than losing one's life. No, but it's also true that in criminal proceedings, there's many, many more protections, a much more robust system that's going to protect against abuses starting at the trial court. But those go to questions of due process. So what fundamental flaws are there in this system that doesn't protect your client? The problem is it's – when the Supreme Court created this protection in citizenship cases, it didn't focus on the shoddy nature of the underlying proceeding. Instead, it focused on how important citizenship is and what role it plays in our democracy. And so when you look at cases about individuals being challenged because of misrepresentations like in Costello – But you argued to Judge Kuczynski that we had to have an extra high burden of proof here, one that's not familiar to us in any other context, and we had to do it in order to compensate for mistakes that are going to be made because we don't have the adequate processes of the criminal context. I'm trying to figure out what those processes are that have failed here. So the last point that I made was in distinguishing it from criminal cases. First, I don't purport to assert that this court needs to find that clear, unequivocal, and convincing is a more demanding or exacting standard than beyond reasonable doubt. But what I do think is clear from the Supreme Court's jurisprudence is that it's a more demanding standard than clear and convincing evidence. You know, let me redirect this if I could. I mean, we've been so far talking about what burden of proof means, clear, unequivocal, and convincing. Those are the Supreme Court's words. They use them over and over again, and maybe for my own sake I just want to say what that means to me is pretty darn convincing, and to cut it more finely than that I find difficult. But so far we've not addressed the problem that I think is actually a more important one, and that is what is the standard of appellate review? Because the government has argued and was able to convince the panel that our standard of appellate review is for clear error, and I'm having trouble understanding how that can be given the line of cases, Fedorenko, Costello, Chaunt, and so on. The argument is, I guess, that Pullman, Swint, and Bessemer have overruled those. Could you please address that? Certainly. While Pullman's standard, I think, made clear that the Supreme Court was not going to apply a broader interpretation of Baumgartner and his progeny in other contexts, there is nothing in that decision that would in any way be read to abrogate the Supreme Court's online case law in the citizenship context. But isn't that the question I asked you before? I agree with you for purposes of discussion. The Supreme Court didn't overrule Baumgartner or Fedorenko or any other case, but none of those were all denaturalization cases, weren't they? That's correct. That's correct. And so, yes, you're presenting a separate argument than the government is presenting. Well, I don't know. I'm not presenting an argument. I'm asking questions. I don't get paid well. I don't get paid well enough to present arguments. But my question is, what do you do with Woodby? What do you do with a Supreme Court case that says that the standard of review is for substantial evidence in precisely this situation? It's not precisely this situation. What distinguishes this case from Woodby is that this is not simply a deportation case. This is a case where the government has already made determinations of citizenship, and that was the basis of independent review in the denaturalization case. So your position is that the government's prior determinations not only raised the burden of proof, declaring convincing, but changed the standard of review also? Yes. And what Supreme Court case says that? The Supreme Court cases that we have only talk about denaturalization. Okay. And maybe that's the right position. I just want to make sure we're not inadvertently overruling the Supreme Court. And I would just mimic the language of this Court in Lim when they also applied that in a separate context in the certificate of citizenship. And there they said, more important than the similarities pointed out above is the fact that the practical effect of a decision favorable to the government in this case is the same as that which results from a decision favorable to the government in a denaturalization case. In either case, the individual is stripped of what Schneiderman was termed the priceless benefits which derive from the status of citizenship. And so that's why I label this as a hybrid. Not only is it in a deportation context, but it's also a case where there's been prior determinations that Mr. Mondaca is a U.S. citizen. And while it doesn't go precisely to your point, but there is also case law dealing with expatriations like Gonzales v. Landon where the court addressing the burden of proof said, no, we're going to apply the same standard of proof that we applied in the denaturalization context. It didn't get to dealing with the question of independent appellate review. But again, I think it's worth noting that originally a lot of the discussion, whether you're in Schneiderman or Baumgardner or moving forward from there, is why a naturalized citizen should be entitled to all the same rights as someone who was born here in this country. And here we have someone who's claimed to have been born in this country. The government's affirmed that determination on multiple occasions, beginning at least from 1977 through 2005. And as a consequence, for the last 40 years, his family has came here, developed and we talked about in the record about the fact that he has nine kids, four of them who are school teachers, one who works for the federal government, another one works at the courthouse, another one works at the Hanford nuclear plant. The determinations that the district court makes, the findings, impact not just Mr. Mondacco but that whole family. And that's why it's relevant to keep hammering back to the prior determinations. In your view – I'm sorry. In your view, is there anything the government could have done to meet its burden in this case? Did the government ever track down this other chap, Salvador Mondacco Vega? And hopefully this won't go to both questions. Same question. No. What was notable again about the district court is the government never attempted to present any new evidence. The government, for example, has never attempted to show that any other individual is Reynaldo Mondacco. The one exception to that is when they first issued a charging document against my client. They said that the true Reynaldo is the individual who back in 1953 applied for a social security number. But then, a few years later, after both sides presented forensic reports agreeing that it was my client who signed that application for social security and has used that social security number ever since, the government quickly backpedaled from that. And after that, they just didn't even mention who this true Reynaldo Mondacco is. They didn't ever try to present evidence regarding anybody else. You know, it occurs to me that a fairly simple way to do this, now it would have cost the government some time and effort, is we know the names of each of the sets of parents for these two individuals. They could have gone to Mexico, asked in that town what records were there of the names of his parents. Of course, they're long since deceased. But I don't think the names of the parents of the town where he lived would have been very hard to discover. And once you know the names of the parents, you know if this is the right guy or not, because the names are on the birth certificate. And it is true that neither have they found or produced evidence of Mr. Mondacco or of the parents. And that goes back, I think, to answering your question. There was evidence that could have been ferreted out that may have helped in one way or may have hurt him. But that evidence was never presented. There was no efforts made. Instead, they relied on supposition and speculation. They convinced the district court to accept their invitation to speculate about why a U.S. citizen would allow himself to be deported. And so then you had this- But that was not a finding by the district court, was it? It was both findings and in its conclusions. If we look at the different findings- What was the year of that deportation? 1954. Right. Which deportation? I'm sorry. The one you just referred to. When they charged him with deportation and they said who the true Reynaldo was, that was in 1994 when they created the order to show costs, the charging document which is at the base of these proceedings here. And then- You're talking about what we have in front of us now, right? That's correct. Rather than the 1954 where he suggested he was somebody else, you're not dealing with that because I thought that was the basis of- No, no. I readily acknowledge that he claimed separate aliases, that when he did so, he was removed that same day. And the record shows every time that he claimed an alias, was let out of jail, deported that same day, was able to come back in the very same day if not the next day, exactly like what occurred when he applied for a Social Security number. Yeah. What year was that? When he was deported and came back the next day? Yeah. That was in 1953, in May of 1953. That's the way people work things at that time. Hello. Hey, hey. Hi. For what? Let's find out, when did he get his first- He said that he got it when he was deported the first time, which is in 1951. Uh-huh. So I seek to preserve my last few minutes for rebuttal, thank you. Okay. We'll hear from the owner. May it please the Court, I'm August Fungi with the Justice Department. This case presents an unusual and lengthy history, but it boggles about identity fraud. The district court held the government to a significant burden in establishing that the petitioner was not Mr. Cardone Mondacco, but it was, in fact, Salvador Mondacco Vega. It applied a clear and convincing or clear, unequivocal and convincing standard on the government. Once he came forward with a birth certificate for the other gentleman and with some prior administrative determinations that accepted that birth certificate at face value at the time, we don't quibble with imposing a clear and convincing standard on the government in these circumstances. How about the word equivocal? You dropped that out of the Supreme Court's language. Unequivocal. Unequivocal. We do not think the term unequivocal changes the standard of review. So you're willing to accept that that word is in the standard of proof? We do not. Well, you say it doesn't make any difference, so you must be willing to accept the existence of the word. Well, I mean, the Supreme Court has used that word several times in denaturalization cases. It has never used that word in a case about citizenship to discuss the birth. So you think that there may be a difference between clear and convincing evidence in the one context and clear and unequivocal in convincing evidence in a denaturalization proceeding? We think that the better approach is to kind of bring all this together and apply the straightforward clear and convincing standard. Now, this is not a denaturalization case, so this Court can't decide what the standard is in a denaturalization case. Well, what are the differences between a denaturalization case and the facts of this case where citizenship was granted? The government's had 40 years to investigate this case. And so from a policy standpoint, in all the ways that matter, what are the differences between this case and the denaturalization context? Well, this is really the first proceeding to resolve this person's citizenship through the way that Congress intended, which was a federal court action before a district court putting aside prior administrative determinations, whichever way they go, and having the court listen to the evidence, hear from the witnesses. Obviously, the court's going to hear the evidence that the naturalization applications in the 70s were granted based on the other birth certificate. It's going to hear the evidence about the passport. Does it matter that at other times the United States was aware of these allegations that he might not be a citizen but didn't do anything about it? Does that affect this at all? I really don't think it should have a big impact. I think, you know, it's... Well, does it have any impact? Does it have an evidentiary impact? Because if we're weighing the evidence, that might be very important to me. Does it have an evidentiary impact? I think this is all evidence for the district court to hear and weigh together. I think the government should be expected to have a pretty good explanation for what happened. I think we did have a pretty good explanation here. The person was using a different birth certificate. Drawing the connection between the two was challenging. You have a... I think this court in the Gorbach case, which you heard on Bonn, talks about the difficulty of processing large number of applications in routine. There are going to be errors made. And that's kind of what happened, I think, here. That's the explanation we have. It just took a while for the government, the proper arms of the government, to draw the connection between Mondaca Vega, who was signing a declaration saying, I'm from Mexico, and the fingerprints, which match the petitioner today, and the man, Rinaldo Carmon Mondaca, who was using a different birth certificate, had a wedding certificate, had all kinds of ID under that name. So there's really... It's not a simple matter. I'd like to think the government does this better today, but I don't know for sure. Let me ask you, several of the petitioner's children have derivative citizenship based on his citizenship. What happens if this court denies the petition for review? I can say we have no interest in challenging the children of Mr. Mondaca Vega. No, but this court... Why bother an 81-year-old man who worked in the fields all his life to bring food to them? I don't understand that. Well, Your Honor, this proceeding began after Mr. Mondaca Vega served a criminal sentence for second-degree assault with intent, with a very high level of intent, and that brought him to... I mean, this court understands the difficulty of the immigration system where the government must exercise prosecutorial discretion in deciding who to seek removal against. Now, the government has no way to initiate a citizen proceeding other than starting removal proceedings, and that's a serious point here. In the 1970s, there was some evidence that there was a connection between these two folks, but the IMS at the time might have said, you know, this is just not a priority. But after he committed a serious crime, the IMS could say, you know what, this is someone who we need to get to the bottom of the situation. Clarify for me, counsel, what happened in 1983, because he was federally prosecuted and the issue of his immigration status came up at that time. Did the U.S. Attorney's Office issue a declination? What does the record reflect in terms of what decision the government chose to make at that point? In 1980, he was convicted for bringing people across the border. You know, the records are in the J.A. I don't know exactly what happened with regard to any immigration proceedings at the time, but it sounds like there were a couple times in the 80s when the IMS started to look at the case and then, you know, it let it pass. So all I can say is that, you know, when the IMS is making these difficult judgments about when to initiate removal proceedings, especially in this day and age, we should not sort of hold them in default for not focusing its resources on someone for a period of time. Is there an estoppel principle that applies here? There is no citizenship by estoppel, and that's well established by the Supreme Court. Well, no, but there may not be citizenship by estoppel, but should the government be estopped from contending that he's not a citizen for purposes of removal? No, I think that would—I mean, I don't understand how we can distinguish— Estoppel against the government. Sovereign immunity prevents estoppel against the government. Yeah, and then Panglennan, the Supreme Court said you can't apply equitable principles to— So does that answer Judge Merguia's question?  But that wouldn't stop anybody subsequently to exercise the discretion differently. I mean— I know you don't, but you could have subsequent administration. You're not taking the position that they are citizens, period, end of story. I think, you know, this Court's Lim decision from 1970, while I'm not sure it's doctrinally up to date, it did cite throughout about how that individual was treated as a citizen because of things his father and grandfather did at the turn of the century, and not just last century, the century before. And the Court said, look, this individual had nothing to do with this earlier fraud, and we're going to have—these are special circumstances, and we're going to treat this case in a special way. And I think that is open to—that is the sort of thing that might be appropriate. But that also illustrates the point, though, because the government pursued Ms. Perlin based on what the father and grandfather did. That was the exercise of the prosecutorial discretion. Yes, and the Court stepped in and said that's not right. But when we are talking about the individual who is responsible for the fraud— But if we look at this case, I think it's inescapable. And no matter what you say about how nice the government's going to be, how kind-hearted, how soft-hearted, it's inescapable that if this father is not an American citizen, several of his children are not American citizens. It's got to be right. Well, I think you would have to have an affirmative denaturalization proceeding against several of them. Then you do have the higher burden. How could it even be a denaturalization proceeding? They've never been naturalized. That is to say, if he is not an American citizen, these children were born in Mexico, they don't have citizenship through him, they're not American citizens. End of story. How do you get around that? Well, again, I think, you know, the court in Limb devised some protections for that unique and special situation where you have generations passing. In Limb, the district court there made a clear determination that the person, Mr. Limb, was not a citizen. Was that right? In Limb. Yes. In here, the district court used some language, and I'm not sure what to make of it, the highly probable language regarding Mr. Mondaca Vega here. What are we supposed to make of this language of highly probable and not persuaded? And he doesn't say he's not credible, and then he says, I think it's highly probable that he's a Mexican citizen. I think he got that highly probable from a description of how the clear and convincing standard works. He got it from a jury instruction and tried to take an equivocal out of it. Okay. Well, thanks for that. You know, I think clear and convincing evidence that the more we kind of throw different terms in, the more complicated it becomes, and I think we have a very good understanding of what clear and convincing means. It's been used over and over again. It's been described by the Supreme Court as being a single intermediate standard, and to the extent we start trying other terms of it. What is the definition of clear and convincing? Well, I think the district court said highly probable, but the evidence is, I mean, it's not quite beyond reasonable doubt. It is more than a preponderance, and courts apply it every day. It's highly probably true. That's what they teach us at Berkeley. That's the word the district court used, so I think that's fair. What do you make of Addington in that context? You know, Addington goes to some length to describe what unequivocal means, at least in Addington. Why shouldn't Addington guide us? I think the takeaway from Addington is that you can't read unequivocal at face value. It says quite clearly unequivocal by itself is a burden exceeding the burden in criminal cases. So I think by using that by itself term. Well, I don't think it does. Beyond a reasonable doubt means certainty. You must be sure. That's what it means. Well, I would say the Supreme Court in Addington, and this is the Supreme Court talking, not me, it said unequivocal means no doubt. You can't even have unreasonable doubt if the standard is unequivocal and if you take that word by itself. So I think that it has to be read in conjunction with the other words. Addington tried to kind of bring these all together as to a single intermediate standard. I think having multiple gradations of this standard is not helpful to district judges. Well, we heard that from the Supreme Court. So what are we supposed to do? The Supreme Court is also the court that brought this into the fold and said we've used different terms to refer to clear and convincing. This is Addington and this is what it means. And it said the same thing in Cooper. And I think even if you look at the case Schneiderman that created this higher standard, it uses the terms interchangeably. Earlier in the Schneiderman decision it says it expects evidence of a clear and convincing character. And then it goes on to add unequivocal. So it uses both terms. In many cases at all levels of the courts have used both terms to mean the same thing. And I think it makes much more sense for us to have a single intermediate standard. This is the standard that's designed for civil cases where there are very serious liberty interests at stake. And that's the kind of case we have here. And it's used in other circumstances where you have very serious liberty interests at stake, a state like non-criminal detention. These are very serious cases. And I think it's an appropriate standard for this type. Counselor, I tried to find clear, unequivocal and convincing evidence in other parts of removal or deportation statutes. And one that came to my attention was 1229A, removal proceedings. In removal proceedings, of course, there's a clear and convincing standard as to the removal itself. But even the Congress understands that there are certain times when it's clear, unequivocal and convincing, which is different than clear and convincing. And that was the consequence of failure to appear. There it says that the alien who got the notice, then the government has to come forth if they're going to remove him in abstention for failure to appear, with clear, unequivocal and convincing evidence that the written notice was so provided and that the alien is removable. So even the Congress understands that's a little bit higher than just the clear and convincing they used in the same statute. When it deals with deportability under the removal. So I guess I'm trying to figure out how you can make that argument. It seems to me what the Supreme Court is saying in Addington is proof that admits of no doubt a burden approximating if not exceeding that used in criminal cases. They're saying that's a little bit higher than clear and convincing. Even the Congress can see the difference. Tell me what I'm missing. You know, I'm not fully familiar with that specific provision of the statute, but I'd be happy to address it. I think that in 1996, Congress created the clear and convincing standard in 1229. And in part, this was in response to the would be decision. Well, I understand. That's why Congress put it in 1229. It's the deportable, but they didn't leave it there. What they said was there's a consequence of a failure to appear. In other words, throwing him out in abstention. They didn't like that. They said that's something we're not going to go for. And so, therefore, every time I think about abstention and they're not there, then I have to have clear, unequivocal and convincing evidence that the written notice was provided and the alien was removable. That's a different standard to me than deportable. And so now it seems to me what you're trying to get me to buy is that everything's clear and convincing. That's what I am. Am I then to say that the Congress doesn't know what consequence and failure to appear means? Your Honor, I don't know exactly the enactment history of that law, but I do think that there's been a shift in the way the courts and Congress and the Supreme Court as well has under the terminology they've used. The reason that I'm asking the question is that if there's anybody who kind of concentrates on standard review, I try to be the guy. And I try to apply the right standard. It seems to me that if we're got a loss of citizenship and an expulsion here, we haven't got the normal here. And the Supreme Court in Addington didn't say, well, that's just clear and convincing. They went so far as to almost say of no doubt. But they're approximating, if not exceeding, that used in criminal cases. So I and I looked at 52A and I looked at the other cases that wanted to go around this. And frankly, they don't address it. So I guess I just need the explanation how I get the clear and convincing. Well, I think because this is a removal proceeding, we actually have more layers of protection. Because keep in mind, before the agency, the government had to prove alienage by clear and convincing evidence without any showing by the petitioner. So it either had to come up with some sort of concession or a foreign birth certificate or the type of evidence that would convince the agency fact finder that the person was an alien by clear and convincing evidence. Yeah, but the agency fact finder works for the Justice Department. That is absolutely true. But then we have – that's why we have a petition for a removal proceeding. And now we have another layer of protection. But you're saying that the agency level government already has to come forward with clear and convincing. Absolutely. Which then leaves out any possibility of operation of the fact when we're testing his citizenship that he's come forward with prima facie evidence and the burden now shifts to the government. But you say that government is no higher than the government already had to bear. Yes. Because we're adding a separate fact finder and a separate – But that doesn't make any sense to me. Because we're adding a separate – Congress has added a separate layer of protection based on Supreme Court rulings from the turn of the century that said you cannot remove a U.S. citizen by executive order. You have to have a court procedure. Do you think – And all the other protections we have in a district court fact finder, the citizenship. Do you think Lim was correctly decided? I don't think that it properly imported the denaturalization standards. But a citizenship challenge under both 1503 or Section B-5 – we have a B-5 remand here – they should work the same way. And in both of those cases, this court has said that you have the burden of proof is on the person seeking to establish citizenship by a preponderance of the evidence. But Lim basically applied denaturalization law. And so do you accept that? It's a yes or no. Well, we don't dispute that once – we – our position is the burden of proof in these proceedings is preponderance of the evidence. Now, when we have a case like this where there are prior administrative determinations, we think it's fair for the court to expect the government to come up with a clear and convincing evidence explaining what happened before and why. Is that a yes? I'm not here to answer Judge McGee's question. Are you – Lim says where respective fraud is relied upon, as here, the facts in the law should be construed as far as reasonably possible in favor of the citizen, citing Schneiderman. Do you think that's the appropriate standard of review? I think this Court in Sanchez-Martinez, which is in the early 80s – I think we both asked a yes or no question. Is that the appropriate standard of review? I'm sorry. But reading Lim, if I can supplement Judge McGee's question, where respective fraud is relied upon, as here, the facts in the law should be construed as far as reasonably possible in favor of the citizen, citing Schneiderman. If we applied that standard of review here, wouldn't Mr. Mondacco win? I don't quite understand that to be a standard of review. I think that's sort of a legal presumption. I don't follow that. I think the Court in Lim applied a preponderance of the evidence, and then because of special circumstances expected the government to come forward with clear, unequivocal, and convincing evidence. Like they do in denaturalizations. And I think we are – Yes, like they do in denaturalization cases. In a denaturalization case. And I think we – And you referenced Sanchez-Martinez. Isn't that case quite different from this one? I mean, there wasn't years of the government recognizing or treating the petitioner as a citizen. Doesn't that distinguish from Sanchez-Martinez? Yes, it did. It talked about the special circumstances there. And in Lim, it talked about the special circumstances that you had generational passage of time. So I think we would say that – I mean, I don't want to fight over things we don't need to fight about, because we do agree that under the circumstances of this case, it was correct and proper for the district court to expect us to come up with clear and convincing evidence explaining the priors. I hate to interrupt the flow here, but so far we seem to have been talking about the burden of proof rather than cleanly about what is the standard for appellate review. Judge McGeer and Judge Hurwitz, I think we're headed there, but I'm not sure you – I hope we weren't there. So if we weren't, assume we were. But I don't think that your answers were cleanly addressing that. I'm reading from Lim, but then that's sort of keying off where we go. Lim says, On appeal, this Court must make an independent determination as to whether the evidence is a da-da-da. We think that's wrong. My question is – You think that's wrong. We think that's incorrect. Now, do you think that's incorrect with respect to Lim, where we're talking about denaturalization? Or are you leaving him alone in denaturalization and saying it only applies – that it is clear – it is clear error review when we're talking about determination of citizenship at removal? That is to say, I'm going back to Judge Hurwitz's question at the very beginning. Are you making a distinction between denaturalization and questions as to whether or not someone claiming to be naturally born a citizen is a citizen? Are you making that distinction? Yes, we think – Did you make that distinction? We would not – Did you make that distinction in your argument to the panel? I believe so. I mean, we pointed out that we think the Federal Rule of Civil Procedure 52 would apply here in a normal case. But you're saying – so you're saying Lim is wrong, too, then. Well, I mean, I'm not sure we could have said Lim was wrong to the panel, but we did certainly argue that things have changed. Are you arguing now that Lim is wrong? Lim is wrong as to the standard of appellate review. So you think Lim is wrong with respect to denaturalization proceedings as well as the sort of the proceeding now in front of us? Lim was a citizenship case. We think Lim is wrong to apply a de novo appellate review in citizenship. And so you're saying that de novo review or independent review – I won't use the word de novo – is simply wrong if we're talking about determination of citizenship? Yes. Okay. But so far, when you say indetermination of citizenship, that would seem to me to encompass not only denaturalization proceedings, but also any proceeding in which you're trying to figure out, is the person a citizen? Yes, I think under 1503 – But Schneiderman and Baumgartner say the contrary. We're not free to disregard them, are we? Those are – well, I think – Those are denaturalization proceedings. And I think another thing is, is that I think the Supreme Court has been bringing – they're actually bringing those cases into the fold on the standard of appellate review. Well, except the Supreme Court tells us all the time not to suppose what they would have done. But they've done more than – Well, they've never overruled Baumgartner and Schneiderman. I understand your argument that those are denaturalization cases. But is your argument dependent on the notion that Baumgartner and Schneiderman have been implicitly overruled by the Supreme Court? No. Why are you showing me that? Well, I mean, I'm happy to move on. But, I mean, our argument is we shouldn't apply those to this new circumstance, especially when the Supreme Court has drawn all of that into question. Even though Lim did. Even though Lim did. Now, you made the argument in the First Circuit case – it has a really long name that I can't very well pronounce. Zajan-Kauskas. Yeah, that case. The government made the argument in that case that Baumgartner and standard of proof was overruled in denaturalization as well. It sounds like that's the argument. No, that is our position. But if you don't want to hear about it, I won't talk about it. First Circuit turned you down. It sounds as though your position across the board is, if it's a question of determination of citizenship, the independent review by the appellate body is wrong. Well, again, there are some distinctions here. I think Baumgartner is binding for the legal type of factual issue it was deciding, which was all about whether someone had shown sufficient loyalty to the United States of America. There you have a factual issue that is so closely tied to legal issues. It's very much like the First Amendment cases. Yeah, but then how about the whole line of cases? Fedorenko, Costello, Chant, Nolak. I mean, those are not – those quote Baumgartner. I'll give you that. But they do not discuss that issue. And let me talk about Kongos for a second. I'm not sure I agree with you. You don't discuss that issue. I'll just quote from Fedorenko. And Kongos answers the question. In Kongos, which was a late 80s case by the Supreme Court, it talked about legal issues reviewed for – was this with materiality a legal issue to be reviewed to no vote? And this is a denaturalization case. Or a factual issue, which is for the trial court. That's what the court said in that case. Now, what case were you talking about? This is Kongos, K-U-N-G-O-S. Okay. And I think it's worth looking at because I think what the Supreme Court has been doing is sort of bringing this into the normal fold under the federal rules. And another case I think is worth looking at is Naur, which is from 1946, K-N-A-U-E-R. And there, the Supreme Court – this is just two years after Baumgartner – specifically cited the requirements of Rule 52A. And it says we reexamine the facts to determine. That's Naur. That doesn't sound like we're just doing it under clear error. Yeah, but it also says we give due regard required by Rule 52A. So I think, you know, the court is even just right after Baumgartner sort of reconciling this with the requirements of the federal rules. And I think Pullman really takes this issue. Well, you're just speculating. You're just trying to weave all these things together. No, I think there is a theory that explains what the Supreme Court is doing. It is talking about facts that are so close. You really don't know what the Supreme Court is doing, do we? I mean, you've got these theories that put things together, make all kinds of stories out of it. You know, but the fact here is that this person has plenty of evidence on the record to show that he was born here. His parents are on his birth certificate. He got his passport. He got his Social Security. He put their names on it. His children were nationalized. What the hell else do you want? I mean, I just don't understand it. I don't understand it. May I speak? You know, and here we're talking about somebody's faith, and we're just putting all these little wisps together and trying to come up with a theory. And he's a citizen. He was born here. We want to take it away. We have a very, very heavy burden in dealing with that. It's just that simple to me. I think that's a fair point. Maybe I should have gone and do a different business. Conceptually, I mean, I do want to talk about the facts for a minute because we do care about the sort of identity fraud that is rampant in the immigration system, and that's why I think it's hard to let go. You know, if you're worried about the immigration system, why don't you go out there and put the force of the federal government against all these notorious, those disbarred lawyers that are taking hundreds and hundreds and hundreds of people down the wrong path, and the government knows it because the government takes the position that a disbarred lawyer is better than no lawyer. So the government is a co-conspirator in all this stuff going on. And there's cruelty out there going on every, every single day. But we don't know that because we don't know these folks out there. A lot of us don't. But I grew up with them, and I understand them. Did the government make any effort? That's the way I feel about it. Excuse me. Did the government make any effort to determine the names of his parents? Well, we know the names that he claims as parents. No, no, I understand that. Did the government go to the town where he lived and inquire about the names of the people that were his parents? Two points on that. One is we sought discovery from a petitioner for any information he had about people he claimed were his parents, and he had nothing. He provided nothing in response to the discovery. But the government had the burden at this point. So I'm asking what the government did to discover independently. Discovery counts as something we can do to meet our burden. And if anyone's going to have information on his real parents, any papers with their name on it, cards, letters, he would have it. I mean, it's going to be hard for us to find it, but he should have some sort of access to that. There was nothing listing the names of the parents on the name he's using for the birth certificate he's using. What about tracking down the Salvador Mondaga Vega? Well, we feel like we tracked him down. We think we know who he is. He's a petitioner. What about the birth certificate for Rinaldo Mondaga? The government concedes that that is a legitimate birth certificate issued to a real person born in California. Now, the cases that I've seen, albeit a limited universe of cases, the government tracks down the person that the government purports to be the real person to demonstrate that this guy is not who he claims to be. We looked through school records, death records. We could not find evidence about that. So you couldn't find the Rinaldo Mondaga that was born in California, and this petitioner is claiming, well, you couldn't find him because it's me, right? That's what he's claiming. But in the 50s, he was saying he was the other man. His fingerprints matched. But if it's true, then despite all the identity fraud, he's still a citizen. True. If his claim is true that this is a legitimate birth certificate, despite his identity fraud, he's still a citizen. If he is Rinaldo, yes, he is a citizen. But we feel very strongly that we made a clear and convincing showing, and the district court agreed and the panel agreed that this is not the man. This man is Salvador Mondaga Vega. He swore on the 50s that that was his name. But the panel agreed based upon a deferential standard of review. Sure. Well, obviously, we think that's appropriate. Although, you know, if you do review it de novo, we certainly aren't giving up. We think we established the facts. Supposing we review it de novo and we suggest that the standard is a little better than clear and convincing, that it's clear and convincing and unequivocal, do we need to remand to the district court? I mean, if we're getting – I mean, if this were – I mean, frankly, what your answer is going to be is going to be very interesting to me. I'm laying it out to you. We think – I mean, if you think the district court applied the wrong standard of review, the normal practice is to remand. Now, when this court has de novo fact review, if you think that's true and you really think that is the wrong way to go here, then I guess this court can decide this itself. But, you know, this court didn't observe the witnesses. This didn't – the court didn't see – So then you think we should step back. Yeah. I mean – Well, are you abandoning the clear error standard of review argument? No. He asked me what – if you guys reject that. No, we are committed to clear error review. We think that's – you know, district courts are the best fact finders we have in this country. I mean, there's no better. And I think it's appropriate to apply the normal standard that the federal rules apply. I think even in cases where – There was a lot of speculation going on here, too, with the district judge. I think the district court had trouble trying to figure out how he got this other birth certificate. And we don't know. I mean – and I think he – suppose one way he could have gotten it. But I think we win even if it wasn't that one way. I think the really – the evidence that really makes our case is he used the name in the 1950s. He swore to it. His fingerprints match the person he is now. The explanation he gave for using the name is that he came up with it while he was in immigration detention to get out quickly. But if that were true, it would be almost impossible that that name would match a real person who was born in the town he was born in. And this is a small town, under 10,000 people. And within months – I think a month and a half or two months of when he now claims he was born. And that is just – the likelihood of that being possible is not practical. He has had a chance – many chances. Thank you. In responding to that last point, if I may, that would be – if you flipped it on the opposite side, how is it that he obtained a birth certificate to Reynaldo Mundaca that's born in the same year and then talk about the chances of him being able to discover that? Whether he used a real identity of a person in Mexico as an alias or not, that doesn't make it any more likely that he is that real person, just as he used alternative aliases. Presumably, if the government came up with the alias for Jose, which is also in the FBI reports, and they found a birth certificate there, they could say, well, he scored that identity, and he's heretofore bound by it. But it was the government who afterwards, through repeated determinations, determined that he was a U.S. citizen. And to be clear, this wasn't some slipshod. He escaped through an informal process when he applied for these petitions in 1977. In 1973, several years before, the agency had already gone through this investigation and determined that he had been deported using different names. And so the same agency was presented with these applications in 1977. I asked before, and let me ask you again. I understand why they get you the clear, convincing, and unequivocal burden of proof on the part of the government. And I think there's probably no good way that you can argue the government was collateralized and stopped. So what else does this history get you other than that clear, convincing, and unequivocal burden of proof? Does it get you a heightened standard of review? And if so, what case says that? I think it does get you a heightened standard of review, and it's based upon the denaturalization cases where the Supreme Court is looking at prior determinations of citizens and saying you can't turn back the clock without not only this heavy burden, but without us having this heightened standard. And the government now made reference to backtracking an hour in the 40s. That clearly wasn't the case. If you look at cases like Shonk, which is from 1960, it said the issues in these cases are so important to the liberty of the citizen that the weight normally given concurrent findings of two lower courts does not preclude reconsideration here. And then in Costello, again in the 60s, and Costello, of course, had nothing to do with ideas about political opinions. This was an individual who had claimed to be a real estate agent. Later on, he was revealed to be a bootlegger. But even there, it was a clear and unquotable and convincing evidence as a burden of proof, and as a standard of review, it was independent review. And again, Fedorenko applied an independent standard of review in the 80s. One other point that the government kind of dismissed this idea of vulnerability of his family. And yet, in the trial court, when the daughter testified, the attorney for the government asked her on the stand if she understood the consequences to her if it was found out that her father was not entitled to his claim of citizenship. You know, as the Supreme Court said in Trump, citizenship is not a license that expires upon this behavior. Regardless of my client's quirky history of whether it's his criminal record or taking on multiple aliases when he's caught as a migrant farm worker and allows himself to be removed multiple times, the government has the heavy burden of showing clear and unequivocal and convincing evidence. And even if this court were relegated to review a clear error of that, the speculation that the government relied on to make these findings doesn't satisfy its burden. And one of the questions that I didn't specifically address earlier is like, was it that the, I'm sorry, that the district court made that speculation. And I left it here, I'm sorry. But on page 15 of the court's order, the second finding on the disputed facts, the headline subtitled, the petitioner's continued use of the name Salvador Mondaca is inexplicable if he is Reynaldo Mondaca. And then it goes on for paragraph after paragraph, speculating about why a U.S. citizen would not allow himself to be removed. And again, divorcing itself from all context. An individual who doesn't speak English, who wasn't raised in the United States, has no formal education. The government faults him for not being able to provide school pictures. He didn't go to school. He had his birth certificate that his migrant farm worker's parents provided to him in 1930. 31, I'm sorry. His parents aren't around. He has no documentation like we do growing up in the suburbs of the states here. It's a different time period that the district court didn't take into consideration when he was speculating about what should have been the actions. Thank you. Case is signed. The state is submitted. Roger.
judges: Kozinski, Pregerson, Thomas, Silverman, Fletcher, Rawlinson, Bybee, Smith, Murguia, Nguyen, Hurwitz